NORTHWESTERN S. S. CO., Limited, v. RANSOM et al.

(Circuit Court of Appeals, Ninth Circuit. January 3, 1910.)

No. 1,732.

1. SHIPPING (§ 164*) — CARRIAGE OF PASSENGERS — LIABILITY OF VESSEL FOR FAILURE TO FURNISH PROPER ACCOMMODATIONS.

Steerage passengers who purchased tickets from Alaskan ports to Seattle, and were compelled to occupy the steerage with a large number of foreign fishermen, who were drunk and disorderly,' and kept the place in a filthy condition, which the officers of the vessel made no effective effort to remedy, and who were not furnished with sleeping accommodations nor suitable or wholesome food, *held* entitled to recover damages from the steamship company in the sum of $300 each.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 534, 537; Dec. Dig. § 164.*

Accommodations to passengers on vessels, see note to The Oregon, 68 C. C. A. 630.]

2. ADMIRALTY (§ 105*)—PLEADING—WAIVER OF OBJECTIONS.

The verification of a pleading in admiralty filed on behalf of a number of passengers of a vessel claiming damages for mistreatment by one of the number only, even though not in conformity with a rule of the court, was an irregularity only, and, where not objected to in the trial court, is not ground for reversal of a judgment in favor of each claimant by the appellate court.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. § 720; Dec. Dig. § 105.*]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington.

Proceedings by the Northwestern Steamship Company, Limited, as owners of the steamer Santa Clara, for limitation of liability. From a decree in favor of damage claimants, petitioner appeals. Affirmed.

W. H. Bogle, C. P. Spooner, and Ira A. Campbell, for appellant. William Martin and J. L. Baldwin, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

HUNT, District Judge. This is a suit in admiralty wherein the owner of the steamship Santa Clara, appellant here, claims protection to the extent of limiting to the appraised value of the ship liabilities for damages claimed on account of the mistreatment of passengers on a voyage from ports in Alaska to Seattle. All claims for such damages were contested. The claimants for damages charged substantially that the ship was not supplied with sufficient provisions nor equipped to carry comfortably or safely the number of passengers received for the voyage; that no berths were furnished and the quarters were unsuitable; that a large number of Chinese and Japanese were in the steerage; that the vessel was in an unclean and unsanitary condition during the voyage, and that the air was foul and close; that the steerage department was crowded and dirty; and that the food was unclean and unwholesome. Testimony was taken, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

174 F.—58

District Court decreed that each of the 33 contestants recover $300 and costs. The steamship company appealed.

The lower court in ordering a decree against the steamship company was of the opinion that the steerage in which the appellees were was foul and filthy; that the ship carried many more passengers than it could furnish berths to; and that, on account of these several facts, the contract of carriage was broken, and the appellees were sorely inconvenienced and abused, and suffered much pain and discomfort. We quote from the opinion of the district judge:

"That the steerage passengers suffered discomfort from the filthy and bad condition of the steerage quarters is well proved. In the steerage there were 90 Chinese and Japanese fishermen, and a number of other foreigners, returning from a fishery where they had been employed during the preceding summer, and a company of United States soldiers. They filled all the space available for the accommodation of steerage passengers. The soldiers were received on board after the vessel reached Valdes, but they occupied space especially reserved for them, so that the steerage passengers other than the fishermen and soldiers were not provided for. The fishermen were all filthy and offensive in their manners. The Europeans were especially so, being intoxicated and turbulent, and the voyage was rough, and there was a good deal of seasickness. In view of these well-established facts and of the captain's testimony, it is absurd to expect the court to believe the testimony of employés on the vessel tending to prove that the steerage was kept in a condition fit for human habitation. In his testimony the captain makes the remarkable admission that conditions in the steerage were so bad that he did not care to go there, and only looked into it a few times."

The testimony is conflicting on nearly every point. The captain and officers of the ship testify that good sleeping accommodations were furnished to all, and that no one was incommoded in that respect. The company further introduced evidence to the effect that, if there were any inconvenienced on account of the lack of berths, the company was not responsible therefor, because warning had been given to those embarking that all the berths were taken, and that their tickets would be redeemed upon presentation at the company's city ticket office. The appellees, on the contrary, testify that no such warning was given them, and that they were not furnished berths or reasonably decent and comfortable places to sleep, but were compelled to roll up in their blankets wherever they could find a vacant surface. There is abundant evidence in the record to support the court's finding.

The appellees testified graphically concerning the unclean condition of the ship and their sufferings resulting therefrom. On the other hand, there is testimony that the steerage quarters were kept in as clean and wholesome a condition as possible under the circumstances. It was well proven that many of the appellees were forced to sleep on the deck of the steerage where they could see the condition of the quarters. A number testified that filth of all kinds was allowed to accumulate on the floor, the sight and smell of which caused them much physical and mental suffering, and rendered their quarters foul and uninhabitable. The circumstances under which the ship was laboring, and the number and behavior of many of the passengers, warrant the belief that the stories of dirt and suffering related by appellees are true. Even the testimony of the appellants tends to show that the steerage was not as it should have been, and that the crew and of-

ficers of the ship made little effort to better things. The deplorable conditions existing in the steerage were directly attributable to the disgusting, not to say dangerous, behavior of a crowd of foreign fishermen. There is no evidence to show that the ship's officers or men made any real effort to control the men, many of whom were drunk and boisterous. They let them go their own way, rendering the steerage unfit for well-behaved men. When the appellees bought their tickets and boarded the ship, they had a right to reasonably clean and comfortable quarters, and they had a right to expect that the ship's officers and employés would do all in their power so to furnish them. This the company failed to do, and for all injury resulting from this culpable neglect it is liable. Sweeping up the filth at stated intervals does not mark the extent of the company's duty. Some earnest effort ought to have been made to stop the trouble at its source—to force the men to conduct themselves properly. No reasonable conclusion seems possible other than that the findings made by the lower court are accurate.

An award of $300 damages does not seem excessive in view of all the circumstances of the case. That was the sum assessed by a jury in an action by one of the passengers against the appellant in the state court, and was regarded as a just and fair allowance by the District Court, from which this appeal is taken. We do not feel that it is unfair.

Appellant contends that the court erred in holding that each of the claimants could recover upon his claim, inasmuch as the answer was signed by the proctor for claimants and was verified by William Lundberg alone. Lundberg recited in his verification that he was one of the claimants named in the answer and was familiar with the facts therein and made the affidavit for and on behalf of each of the claimant passengers, and that he was informed that the other claimants were absent from the city of Seattle. It appears, also, that a joint answer had theretofore been authorized by an order of the court. It would thus seem that the mode of procedure was not at variance with that which was sustained by this court in the case of The Oregon, 133 Fed. 609, 68 C. C. A. 603. But if we assume that rule 56 of the District Court of the Western District of Washington, which prescribes that one claiming damages shall make his claim under oath made by himself, was not followed, still appellant cannot complain, because in the lower court it made no objection to the mode of procedure adopted or to the lack of verification. This court will not now hold that what was at most an irregularity should bar the right of recovery. The general rule is applicable that the requirement of verification is for the protection of a defendant. He may not be obliged to answer to the merits of an unverified claim, provided he objects in due time; but, if he answers without timely objection by pleading to the merits, he waives the privilege of insisting upon a verification. 22 Encyc. of Pleading & Prac. p. 1031.

These views dispose of those features of the case entitled to special attention.

The decree of the District Court is affirmed.